[Cite as *Garofoli v. Whiskey Island Partners, Ltd.*, 2014-Ohio-5433.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 101302**

**AUGUST GAROFOLI, ET AL.**

PLAINTIFFS-APPELLANTS

vs.

**WHISKEY ISLAND PARTNERS LTD.**

DEFENDANT-APPELLEE

**JUDGMENT:**
AFFIRMED IN PART, REVERSED AND
REMANDED IN PART

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-13-801088

**BEFORE:** Rocco P.J., E.T. Gallagher, J., and Stewart, J.

**RELEASED AND JOURNALIZED:** December 11, 2014

**ATTORNEY FOR APPELLANTS**

Mark I. Wachter
Wachter Kurant L.L.C.
30195 Chagrin Boulevard
Suite 300 Pepper Pike Place
Cleveland, Ohio 44124

**ATTORNEY FOR APPELLEE**

Kerry Rhoads-Reith
Segal McCambridge Singer & Mahoney
39475 Thirteen Mile Road
Suite 203
Novi, Michigan   48377

KENNETH A. ROCCO, P.J.:

{¶1} Plaintiffs-appellants Sailfun Ltd. ("Sailfun") and State Auto Insurance Companies ("State Auto") (collectively "appellants") appeal from the trial court's order granting summary judgment in favor of defendant-appellee Whiskey Island Partners ("Whiskey Island"). The trial court correctly granted summary judgment on Sailfun's negligence claim and State Auto's subrogation claim. But the trial court erred in granting summary judgment on Sailfun's bailment claim. Accordingly, we affirm in part, and reverse and remand in part, the trial court's final judgment.

{¶2} Because this case involves an appeal from a grant of summary judgment, we recite the relevant facts in the light most favorable to the nonmoving party, in this case, the appellants. *See Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, 821 N.E.2d 564, ¶ 6.

{¶3} Sailfun is a limited liability entity, the sole purpose of which is to hold title to a 32 foot Hunter sailboat ("the sailboat"). August Garofoli is Sailfun's sole member. Mr. Garofoli's mother, Florence Garofoli, carried insurance on the sailboat with State Auto through her homeowner's policy. Whiskey Island operates the Whiskey Island Marina ("the marina") for Cuyahoga County and its Department of Public Works.

{¶4} On October 10, 2012, Mr. Garofoli contacted Whiskey Island regarding winter storage for the sailboat. According to Mr. Garofoli, he was informed that the first available date for winter storage and haul out was October 24, 2012. Subsequently, on October 24, 2012, Mr. Garofoli entered into a contract with Whiskey Island whereby Whiskey Island would provide winter storage for the sailboat. No haul out date was specified in the contract.

{¶5} Section Two of the contract is entitled "Winter Storage" and provides as follows:

2.1    Marina shall provide winter storage for Owner's Boat. Owner acknowledges that Marina shall have sole discretion to designate the storage space allocated to Owner's Boat. Marina reserves the right to move Owner's Boat at any time within Marina's premises or when moored at temporary docking facilities. Owner agrees that Marina shall not be liable for the care of or protection of the Boat, its appurtenances, or for any loss or damage of any kind or nature to the Boat, or contents, however caused, unless such damage or loss is directly caused by the negligent act or omission of the Marina or its employees.

2.2    Marina shall not be liable for any losses, damages or injuries due to theft, fire and vandalism, acts of God or any other cause to boats, vehicles, equipment, contents or any other property on Marina's premises. Owner will hold Marina harmless for any damage to or breakage of trim tabs, antennas left up, speedo pick-ups, transducers, or outboard motor units, stern drives, etc., including hull, which are underwater at the time the boat is lifted in or out of the water. Owner agrees that this use of Marina's winter storage space entails no warranty of any kind as to the condition of the piers, walkways, gangways, ramps, buildings, aprons, or loading areas, nor shall Marina be responsible for injuries to personal or property occurring upon Marina property for any reason.

{¶6} Section Three of the contract is entitled "Owner's Covenants." Section 3.6 appears

in bold font and provides as follows:

3.6    **Owner shall obtain and maintain continuously such personal liability insurance and property damage insurance as are sufficient to cover any loss due to damage or theft and to protect Owner and hold Marina harmless against any and all loss or damages made by reason of injury or death to person or damage to property and resulting to or caused by Owner's Boat or other property or persons using same regardless of cause or reason. Owner shall provide evidence of insurance for his boat and equipment against damage or theft.**

{¶7} Section 7.2 of the contract contained an integration clause providing that

7.2    This Agreement constitutes the entire Agreement between Marina and Owner regarding the subject matter hereof and all other written or oral agreements, arrangements, representations, understandings, statements and warranties regarding the subject matter hereof are merged and superseded by this Agreement. This Agreement may not be amended unless by a

written instrument signed by both Parties, except as provided in Section 7.3.

{¶8} Immediately after signing the contract and paying the storage fee on October 24, 2012, Mr. Garofoli asserts that he spoke to an unidentified individual in the boat yard who informed him that his boat would be hauled out next. Mr. Garofoli moved the sailboat to the dock adjacent to the lift equipment.

{¶9} But when Mr. Garofoli arrived at the marina the next day on October 25, 2012, the sailboat had not been moved. Mr. Garofoli asked the same unidentified individual from the previous day why his boat had not been pulled, and he was told, "You're next, Mr. Garofoli." But the sailboat was not pulled out on October 25th.

{¶10} According to Daniel Hearns III, Whiskey Island's operations manager, on October 26, 2012, one of Whiskey Island's forklifts used for hauling out boats broke, blocking in another of its forklifts. The forklift was repaired on October 27, 2012, but Hearns testified that because he was still backed up, he was unable to pull the sailboat on that date either. Whiskey Island did not contact Mr. Garofoli during this time period to inform him that the sailboat had not been pulled.

{¶11} By 5:00 p.m. on October 27, 2012, inclement weather set into the Cleveland area. Approximately 90-100 boats were moored at the marina awaiting removal from the water. The weather became increasingly severe as Superstorm Sandy hit the area on October 29-30, 2012. On Monday, October 30, 2012, Mr. Garofoli learned that the sailboat had been severely damaged by Superstorm Sandy when he saw a picture of the damaged sailboat on Facebook.

{¶12} A claim was filed with State Auto for the damage to the sailboat. State Auto issued payment to Mrs. Garofoli in the amount of $10,000 on March 4, 2013.

**{¶13}** On February 8, 2013, Mr. Garofoli and State Auto filed a complaint against Whiskey Island alleging negligence and a subrogation cause of action. On August 12, 2013, an amended complaint was filed substituting Sailfun in for Mr. Garofoli, and adding a bailment cause of action.[1]

**{¶14}** On December 2, 2013, Whiskey Island filed its motion for summary judgment. The trial court granted the motion on March 28, 2014. This appeal followed. Sailfun and State Auto assert a single assignment of error for our review:

> The trial court committed prejudicial error in granting defendant-appellee's motion for summary judgment.

For the reasons that follow, we overrule in part and sustain in part the assignment of error.

**{¶15}** When reviewing an order granting summary judgment, we apply a de novo standard, meaning we independently review the record to determine whether summary judgment is warranted. *Baiko v. Mays*, 140 Ohio App.3d 1, 10, 746 N.E.2d 618 (8th Dist.2000).

**{¶16}** Civ.R. 56(C) provides that summary judgment is appropriate if (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Gilbert*, 104 Ohio St.3d 660, 2004-Ohio-7108, 821 N.E.2d 564, at ¶ 6.

**{¶17}** The moving party carries the initial burden of setting forth specific facts that demonstrate his or her entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the movant fails to meet this burden, the court should not

---

[1]Accordingly, Mr. Garofoli is not a party to this appeal.

grant summary judgment. If the movant does meet its burden, summary judgment is warranted only if the nonmovant fails to establish the existence of a genuine issue of material fact. *Id.* at 293. With this standard in mind, we address each cause of action separately below.

*Negligence*

{¶18} Although appellants' brief appears to abandon its negligence claim, out of an abundance of caution, we will address this claim. Under Ohio law, a claim for negligence requires proof of "(1) the existence of a legal duty, (2) the defendant's breach of that duty, and (3) injury that is the proximate cause of the defendant's breach." *Wallace v. Ohio DOC*, 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, ¶ 22.

{¶19} Sailfun claims that Whiskey Island was negligent because (1) it failed to haul the sailboat out of the water and left it unprotected and open to the elements; (2) it failed to protect the sailboat during the storm; (3) it failed to contact Mr. Garofoli so that he could arrange for protection of the sailboat; and (4) after the storm subsided, it failed to secure the sailboat.

{¶20} The trial court correctly determined that all of the duties allegedly owed by Whiskey Island to Sailfun were incident to the contract between the parties. Sailfun presented no evidence, other than the contract, that would impose a duty on Whiskey Island to protect the sailboat from weather-related damage.

{¶21} We have previously held that

"[a] breach of contract claim does not create a tort claim, and a tort claim based upon the same actions as those upon which a breach of contract claim is based exists only if the breaching party also breaches a duty owed separately from that duty created by the contract, that is, a duty owed even if no contract existed. * * * Further, there must be damages attributable to the wrongful acts which are in addition to those attributable to the breach of contract."

*Zupan v. P.C.S. Automotive, Inc.*, 8th Dist. Cuyahoga No. 94059, 2010-Ohio-3322, ¶ 31, quoting

*Prater v. Three C Body Shop, Inc.*, 10th Dist. Franklin No. 01AP-950, 2002-Ohio-1458.

**{¶22}** Because all of the alleged duties in this case arise out of the contract between Sailfun and Whiskey Island, the trial court properly granted summary judgment to Whiskey Island on the negligence claim. Accordingly, we overrule, in part, the assignment of error. However, as discussed in the next section, while Whiskey Island's duty to Sailfun is contractual in nature, the issue of negligence is highly relevant in this case.

*Breach of Bailment*

**{¶23}** Sailfun argues on appeal that the trial court erred in determining that Whiskey Island was entitled to summary judgment on Sailfun's bailment claim. We agree.

**{¶24}** Under bailment law, "the bailee's promise is to return the bailed property undamaged upon the termination of the bailment." *Manigault v. O'Connor Automotive*, 8th Dist. Cuyahoga No. 87891, 2006-Ohio-6598, ¶ 14. To establish a prima facie case for breach of a bailment contract, the plaintiff must set forth that (1) a bailment contract existed between the parties, (2) the bailed property was delivered to the bailee, and (3) the bailee failed to redeliver the bailed property undamaged at the termination of the bailment. *Id.* If the plaintiff makes a prima facie case for breach of a bailment contract, the burden then shifts to the bailee to explain the failure to redeliver the bailed property. *Id*.

**{¶25}** The bailee is obligated to exercise ordinary care in the safekeeping of the bailor's property and to return the property undamaged upon the termination of the bailment. The bailor can sue the bailee for breach of either duty: the duty of redelivery or the duty to exercise ordinary care. *David v. Lose*, 7 Ohio St.2d 97, 98-99, 218 N.E.2d 442 (1966).

**{¶26}** In the instant case, Sailfun asserts that Whiskey Island failed to exercise ordinary care, thereby causing damage to his boat. The trial court set forth four independent reasons why Whiskey Island was not liable for breach of the bailment contract. For the reasons discussed below, we conclude that the trial court erred in granting summary judgment on the bailment claim.

General Exculpatory Clause

**{¶27}** First, the trial court determined that Section 2.2 of the contract exculpated Whiskey Island from all liability, including liability for negligence. Under Section 2.2, Whisky Island "shall not be liable for any losses, damages or injuries due to theft, fire and vandalism, acts of God *or any other cause* to boats, vehicles, equipment, contents or any other property on Marina's premises." (Emphasis added.) The trial court read Section 2.2 to mean that Whisky Island was not liable for damages or loss to the sailboat even if Whiskey Island failed to exercise ordinary care in protecting the boat.

**{¶28}** But the trial court's analysis makes no mention of Section 2.1 of the contract that states that Whiskey Island "shall not be liable for the care of or protection of the Boat, its appurtenances, or for any loss or damage of any kind or nature to the Boat, or contents, however caused, *unless such damage or loss is directly caused by the negligent act or omission of the Marina or its employees.*" (Emphasis added.) Under this provision, Whiskey Island may be liable for damages directly caused by its own negligence.

**{¶29}** "It is well established that where a general provision in a contract conflicts with a specific provision, the specific provision controls." *Hedrick v. Spitzer Motor City, Inc.*, 8th Dist. Cuyahoga No. 89306, 2007-Ohio-6820, ¶ 16. In *Hedrick*, we explained:

> "The ordinary rule in respect to the construction of contracts is this: that where there are two clauses in any respect conflicting, that which is specifically directed to a particular matter controls in respect thereto over one which is general in its

terms, although within its general terms the particular may be included. Because when the parties express themselves in reference to a particular matter the attention is directed to that, and it must be assumed that it expresses their intent, whereas a reference to some general matter, within which the particular may be included, does not necessarily indicate that the parties had the particular matter in thought."

*Id.*, quoting *Mut. Life Ins. Co. v. Hill*, 193 U.S. 551, 24 S.Ct. 538, 48 L.Ed. 788 (1904). In the instant case, "any other cause" in Section 2.2 is general language, whereas "unless such damage or loss is directly caused by the negligent act or omission of the Marina or its employees," is specific. Accordingly, the language in Section 2.1 controls. Because Section 2.1 states that Whiskey Island can be liable if it is negligent, the trial court erred in concluding that Section 2.2 exculpated Whiskey Island from all liability, including liability stemming from negligence.

Act of God

{¶30} The trial court's next reason for granting summary judgment was based on its determination that the damage to the sailboat was caused by an Act of God and Section 2.2 exculpates Whiskey Island for damage caused by Acts of God.

{¶31} Although no one is debating whether Superstorm Sandy was an act of God, this does not end the inquiry. Whiskey Island retained liability for its own acts of negligence and it did not haul the sailboat out of the water. Had Whiskey Island hauled the sailboat out of the water, the sailboat presumably would not have been damaged by the storm. Because the contract stated both that Whiskey Island could be liable for its acts of negligence, and that it was not liable for Acts of God, we are called to examine the interplay between Acts of God and negligence.

{¶32} In such cases, we have previously explained that summary judgment is not warranted if there is evidence in the record from which reasonable minds could conclude that (1) the defendant was negligent; and (2) either the defendant's negligence concurred with the Act of God in proximately causing the plaintiff's injuries or the defendant "could have reasonably anticipated,

guarded against and foreseen the Act of God which caused the injuries * * *." *Sutliff v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 91337, 2009-Ohio-352, ¶ 20. In the instant case, the trial court failed to conduct this analysis, and simply determined that Whiskey Island was not liable because Superstorm Sandy was an Act of God.

{¶33} Sailfun persuasively argues that, but for Whiskey Island's failure to haul the sailboat out of the water, the damage to the sailboat from Superstorm Sandy would not have occurred. Whiskey Island counters with two arguments as to why it was not negligent. None of Whiskey Island's arguments are well taken.

{¶34} First, Whiskey Island asserts that it did not owe a duty to haul the sailboat out of the water by any specific date. In support of this argument, Whiskey Island points out that the contract is silent on time for performance.

{¶35} But "[w]hen the performance period of a contract is undefined, the law implies a term assuming that the parties intended that performance take place within a reasonable time." *Lewis v. DR Sawmill Sales, Inc.*, 10th Dist. Franklin No. 04AP-1096, 2006-Ohio-1297, ¶ 18, citing *Stewart v. Herron*, 77 Ohio St. 130, 147, 82 N.E. 956 (1907). The issue of "[w]hat constitutes a reasonable time for performance is an issue of fact to be determined by the conditions and circumstances under which the parties executed their agreement and contemplated performance." *Id.* at ¶ 19, citing *Miller v. Bealer*, 80 Ohio App.3d 180, 182, 608 N.E.2d 1133 (9th Dist.1992).

{¶36} Accordingly, the jury must determine when the parties intended that Whiskey Island would haul the sailboat out of the water. This date will determine when Whiskey Island's duty to Sailfun began.

{¶37} Whiskey Island next argues that it was not negligent because it was unforeseeable that Superstorm Sandy would hit Ohio. A defendant's duty to a plaintiff depends, in part, on "the

foreseeability of injury to someone in the plaintiff's position. * * * Injury is foreseeable if a defendant knew or should have known that its act was likely to result in harm to someone.'" *Giant Eagle, Inc. v. Horizon Natl. Contract Servs., LLC*, 8th Dist. Cuyahoga No. 96610, 2012-Ohio-1841, ¶ 45, quoting *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 645, 597 N.E.2d 504 (1992).

**{¶38}** Sailfun points out that Whiskey Island possessed radar and other radar tracking technology that would have provided Whiskey Island with advance notice that Superstorm Sandy was headed towards Ohio. Sailfun also argues that because Superstorm Sandy was moving towards Ohio, it was foreseeable that failing to haul the sailboat out of the water would likely result in damage to the sailboat. While Whiskey Island contests whether its tracking equipment provided it with sufficient notice of the severity of the storm, this is a fact question that should be resolved by the jury. Sailfun has presented evidence to raise an issue of fact concerning foreseeability. Accordingly, Whiskey Island's argument to the contrary is not well taken.

**{¶39}** Reasonable minds could conclude that Whiskey Island was negligent in failing to haul the sailboat out of the water. Reasonable minds could also conclude that Whiskey Island's negligence concurred with Superstorm Sandy in proximately causing damage to Sailfun's sailboat. Furthermore, reasonable minds could conclude that Whiskey Island could have reasonably anticipated, guarded against and foreseen that Superstorm Sandy was coming to Ohio. *See Sutliff*, 8th Dist. Cuyahoga No. 91337, 2009-Ohio-352, at ¶ 20. Accordingly, the trial court erred in granting summary judgment to Whiskey Island on the theory that the Act of God clause in the contract exculpated Whiskey Island.

Only-On-Land Rationale

{¶40} The trial court also granted summary judgment to Whiskey Island on the bailment claim on the theory that Whiskey Island was responsible for the sailboat only while the sailboat was on the land, and that it was Sailfun's responsibility to securely moor the sailboat. But this reasoning ignores the fact that Whiskey Island was also responsible for hauling the boat out of the water within a reasonable time. What constitutes a reasonable period of time is a fact question that has yet to be determined. *See Lewis*, 10th Dist. Franklin No. 04AP-1096, 2006-Ohio-1297, at ¶ 18-19. Whiskey Island cannot avoid liability by leaving the sailboat in the water indefinitely. Accordingly, we disagree with the trial court's reasoning on this point.

Sailfun's Breach of Contract

{¶41} Finally, the trial court asserted that summary judgment on the bailment claim was proper because Sailfun breached the contract. Under Section 3.6 of the contract, Sailfun promised to maintain property damage insurance "sufficient to cover any loss due to damage." Sailfun did not maintain property insurance on the sailboat. According to Whiskey Island, Sailfun is barred from bringing a bailment claim because Sailfun breached its covenant to maintain adequate insurance. We disagree.

{¶42} To meet its prima facie burden, Sailfun was required to demonstrate that (1) a bailment contract existed between the parties, (2) Sailfun delivered the sailboat to Whiskey Island, and (3) Whiskey Island failed to redeliver the sailboat undamaged at the termination of the bailment. *Manigault*, 8th Dist. Cuyahoga No. 87891, 2006-Ohio-6598, at ¶ 14. If Sailfun meets its burden, then the burden shifts to Whiskey Island to explain the failure to redeliver the sailboat.

{¶43} Within this framework, Whiskey Island's argument essentially boils down to the contention that no bailment contract existed due to Sailfun's failure to maintain insurance. In other words, Whiskey Island contends that the contract should be rescinded. "For a court to find

grounds to order the equitable remedy of rescission, it must determine the existence of a breach so substantial and fundamental as to go to the root of the contract." *Admiral Holdings, LLC v. Adamany*, 8th Dist. Cuyahoga No. 87870, 2006-Ohio-6945, ¶ 6, citing *Schneble v. U.S.*, 614 F.Supp 78, 83 (S.D. Ohio 1985). In other words, the breach must be material. *See Westlake v. VWS, Inc.*, 8th Dist. Cuyahoga No. 100180, 2014-Ohio-1833, ¶ 29, quoting *Marion Family YMCA v. Hensel*, 178 Ohio App.3d 140, 2008-Ohio-4413, 897 N.E.2d 184, ¶ 7 (3d Dist.). ("A 'material breach of contract' is a failure to do something that is so fundamental to a contract that the failure to perform defeats the essential purpose of the contract or makes it impossible for the other party to perform.")

{¶44} We do not find that Sailfun's promise to maintain property damage coverage on the sailboat defeats the essential purpose of the contract. The root of the contract was Sailfun's promise to pay a fee in exchange for Whiskey Island's promise to keep the sailboat in safekeeping. The contract exists regardless of whether Sailfun maintained property damage insurance on the sailboat. Accordingly, we reject Whiskey Island's argument to the contrary.

{¶45} Sailfun made out a prima facie case for breach of bailment. Genuine issues of material fact remain as to whether Whiskey Island exercised ordinary care in the safekeeping of the sailboat. We, therefore, conclude that the trial court erred in granting summary judgment to Whiskey Island on Sailfun's breach of bailment claim. Accordingly, we sustain, in part, the assignment of error.

*Subrogation*

{¶46} Appellants also assert that the trial court erred in granting summary judgment on the subrogation claim. We disagree. In the insurance context, subrogation is a derivative claim. A subrogated carrier merely steps into the shoes of its insured and acquires the same rights as its

insured. *Ohio Bur. of Workers' Comp. v. McKinley*, 130 Ohio St.3d 156, 2011-Ohio-4432, 956 N.E.2d 814, ¶ 25. In this case, State Auto had issued an insurance policy on the sailboat to Mr. Garofoli's mother, Florence Garofoli. Accordingly, State Auto can only step into the shoes of Florence Garofoli.

**{¶47}** Under Civ.R. 17(A), "every action shall be prosecuted in the name of the real party in interest." "A real party in interest is one who is directly benefitted or injured by the outcome of the case rather than one merely having an interest in the action itself." *Mickey v. Denk*, 8th Dist. Cuyahoga No. 90484 2008-Ohio-3983, ¶ 10. Under Ohio law, "only a party to a contract, or an intended third-party beneficiary of a contract, may bring an action on a contract." *Id.*, citing *Grant Thornton v. Windsor House, Inc.*, 57 Ohio St.3d 158, 161, 566 N.E.2d 1220 (1991). Because there was no evidence that Florence Garofoli was a party to the contract with Whiskey Island, she has no bailment claim against Whiskey Island. It follows then, that State Auto, likewise, has no subrogation claim against Whiskey Island.

**{¶48}** Appellants assert that the fact that Florence Garofoli had no interest in the sailboat is a matter that State Auto should have raised with Florence Garofoli. We agree. But it is not a matter that State Auto can raise with Whiskey Island. Accordingly, the trial court correctly granted summary judgment on the subrogation claim. We, therefore, overrule, in part, the assignment of error.

**{¶49}** We affirm the trial court's grant of summary judgment for the negligence and subrogation claims. We reverse and remand the trial court's grant of summary judgment on the bailment claim.

It is ordered that appellee and appellant split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
MELODY J. STEWART, J., CONCUR